Matter of Hoyt (Paul Revere Life Ins. Co.--Commissioner of Labor) (2022 NY Slip Op 06518)

Matter of Hoyt (Paul Revere Life Ins. Co.--Commissioner of Labor)

2022 NY Slip Op 06518

Decided on November 17, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 17, 2022

533434
[*1]In the Matter of the Claim of William K. Hoyt Jr., Respondent, Paul Revere Life Insurance Company, Appellant. Commissioner of Labor, Respondent.

Calendar Date:October 20, 2022

Before:Egan Jr., J.P., Lynch, Aarons, Pritzker and McShan, JJ.

Kelley Drye & Warren LLP, New York City (Nicholas J. Kromka of counsel), for appellant.
Catherine A. Barber, Guilderland, for William K. Hoyt Jr., respondent.
Letitia James, Attorney General, New York City (Linda D. Joseph of counsel), for Commissioner of Labor, respondent.

McShan, J.
Appeals from two decisions of the Unemployment Insurance Appeal Board, filed December 16, 2020, which, among other things, ruled that Paul Revere Life Insurance Company was liable for unemployment insurance contributions on remuneration paid to claimant and others similarly situated.
Paul Revere Life Insurance Company sells various insurance products through licensed insurance agents such as claimant. Pursuant to the terms of a written contract, claimant performed services for Paul Revere between September 2017 and March 2018. When Paul Revere's office in Monroe County closed, claimant filed a claim for unemployment insurance benefits. The Department of Labor determined that claimant was eligible for benefits, and Paul Revere was liable for unemployment insurance contributions based upon remuneration paid to claimant and others similarly situated. Following the requested hearing, an Administrative Law Judge (hereinafter ALJ) upheld the original determination, concluding that the written agreement entered into between claimant and Paul Revere did not satisfy the requirements of Labor Law § 511 (21) and, therefore, the statute did not bar claimant's application for unemployment insurance benefits. The ALJ further found that there was evidence of an employment relationship under the traditional common-law test. Upon administrative review, the Unemployment Insurance Appeal Board affirmed the ALJ's decision, prompting this appeal.
We affirm. Labor Law § 511 (21) provides that "[t]he term 'employment' shall not include the services of a licensed insurance agent or broker if," among other things, "the services performed by the agent or broker are performed pursuant to a written contract" (Labor Law § 511 [21] [c]) that, in turn, contains seven statutorily enumerated provisions (see Labor Law § 511 [21] [d] [i]-[vii]; Matter of Gabel [Bankers Life & Cas. Co.-Commissioner of Labor], 199 AD3d 1199, 1200 [3d Dept 2021]; Matter of Joyce [Coface N. Am. Ins. Co.-Commissioner of Labor], 116 AD3d 1132, 1133 [3d Dept 2014]). Here, the Board concluded that two of the seven statutory requirements were absent from the written agreement entered into between claimant and Paul Revere — specifically, provisions demonstrating that claimant was "permitted to work any hours he . . . chooses" (Labor Law § 511 [21] [d] [iii]) and was "permitted to work out of his . . . own office or home or the office of the person for whom services are performed" (Labor Law § 511 [21] [d] [iv]). Paul Revere disagrees, contending that article XI (A) of the written contract satisfies such requirements by providing that "Paul Revere shall not exercise nor have the right to exercise direction or control over [claimant's] time, when or how [claimant] may work, or over the activities of [claimant]."
Preliminarily, we agree with the Board that the conclusory and sweeping language employed in article XI (A) of the contract does not satisfy the requirements of Labor Law § 511 (21) (d) (iii) and [*2](iv). That said, even assuming, without deciding, that the written agreement between Paul Revere and claimant did, as Paul Revere contends, fulfill all of the statutory requirements, we agree with the Board's further conclusion that the parties' conduct was inconsistent with the provisions of Labor Law § 511 (21) and, therefore, the services performed by claimant do not fall within the statutory exclusion.
As a recent decision of this Court makes clear, even in matters "where all seven statutory provisions are present in the parties' written agreement, the mere verbatim inclusion or rote incantation of the seven enumerated provisions will not automatically exclude an insurance agent's or broker's services from the definition of employment 'if it be proven' that the parties' conduct did not actually conform to the seven statutory provisions" (Matter of Gabel [Bankers Life & Cas. Co.-Commissioner of Labor], 199 AD3d at 1201, quoting Labor Law § 511 [21]; see Matter of Paratore [Bankers Life & Cas. Co.-Commissioner of Labor], 199 AD3d 1196, 1197 [3d Dept 2021]). In other words, the statute requires both that the contract at issue contain the seven enumerated provisions and "that the services performed by the insurance agent or broker actually be consistent with those provisions" (Matter of Gabel [Bankers Life & Cas. Co.-Commissioner of Labor], 199 AD3d at 1202; see Matter of Paratore [Bankers Life & Cas. Co.-Commissioner of Labor], 199 AD3d at 1197). "To allow an employer to exclude an insurance agent's or broker's services from the scope of the term 'employment' by mere inclusion of the seven statutorily-enumerated provisions in their written agreement would — in cases where there is evidence demonstrating that the parties' conduct was contrary to, or inconsistent with, any one of the [statutory] provisions — elevate the form of such an agreement over the substance of the parties' actual relationship and undermine the purposes of Labor Law § 511 (21) and unemployment insurance benefits" (Matter of Gabel [Bankers Life & Cas. Co.-Commissioner of Labor], 199 AD3d at 1202 [citation omitted]).
In this regard, claimant testified that he responded to a job posting and, following two interviews, was offered a written contract with Paul Revere. According to claimant, Mondays and Fridays were his "office days," during which time he would pursue leads, phone potential prospects, set up appointments and participate in group interviews with prospective sales agents, and he would spend Tuesday, Wednesday and Thursday each week "out in the field" going door-to-door to solicit business clients. Claimant testified that he worked at least 40 hours each week and that he was expected to work from roughly 9 a.m. to 5 p.m. regardless of whether he was in the office or in the field.
In terms of his daily activities, claimant testified that he was provided with company brochures, binders containing sales leads for his geographic territory, forms for tracking his calls [*3]and appointments and an approved sales call script that he was required to follow. Claimant also worked with Paul Revere's "corporate trainer" who, claimant testified, adopted a "hands on" approach to the sales process by, among other things, showing claimant and other agents how to structure their appointments, submit applications and track their phone calls. According to claimant, "[e]verything" was done through Paul Revere's territory manager and the corporate trainer, the latter of whom accompanied claimant and others on the majority of their sales calls. Finally, claimant testified that he had daily contact with the corporate trainer — most of which was in person — and that he was subject to daily electronic reporting requirements. Notably, claimant testified that if he failed to report his "numbers," i.e., appointments, phone calls and sales, by the end of each business day, the corporate trainer would call or text and tell him "to get the numbers in." Inasmuch as the foregoing proof "demonstrate[es] that at least some aspects of claimant's services were performed in a manner inconsistent with the statutorily-required provisions in the[] written agreement," substantial evidence supports the Board's finding that the requirements of Labor Law § 511 (21) were not met (Matter of Gabel [Bankers Life & Cas. Co.-Commissioner of Labor], 199 AD3d at 1202).
Turning to the issue of whether claimant qualified as an employee under the common-law test,[FN1] "whether an employment relationship exists within the meaning of the unemployment insurance law is a question of fact, no one factor is determinative and the determination of the appeal board, if supported by substantial evidence on the record as a whole, is beyond further judicial review even though there is evidence in the record that would have supported a contrary decision" (Matter of Giampa [Quad Capital, LLC-Commissioner of Labor], 181 AD3d 1129, 1129 [3d Dept 2020] [internal quotation marks and citations omitted]; accord Matter of Rodriguez [Penn Mut. Life Ins. Co.-Commissioner of Labor], 193 AD3d 1190, 1191 [3d Dept 2021]; see Matter of Paratore [Bankers Life & Cas. Co.-Commissioner of Labor], 199 AD3d at 1197). In reviewing the record, we must bear in mind that "[s]ubstantial evidence is a minimal standard requiring less than a preponderance of the evidence. As such, if the evidence reasonably supports the Board's choice, we may not interpose our judgment to reach a contrary conclusion" (Matter of Paratore [Bankers Life & Cas. Co.-Commissioner of Labor], 199 AD3d at 1198 [internal quotation marks and citations omitted]; see Matter of Rodriguez [Penn Mut. Life Ins. Co.-Commissioner of Labor], 193 AD3d at 1191).
In addition to the evidence already discussed regarding claimant's work schedule and reporting requirements, as well as the training, sales leads and oversight provided by Paul Revere through its corporate trainer (see Matter of Slater [Kaufman Leasing Co. LLC-Commissioner of Labor], 156 [*4]AD3d 1277, 1278 [3d Dept 2017]), the record reflects that Paul Revere retained the right to accept or reject applications submitted by claimant (see Matter of Joyce [Coface N. Am Ins. Co.-Commissioner of Labor], 116 AD3d at 1134), and the written agreement between Paul Revere and claimant precluded claimant from soliciting or accepting sales of competing products during the period covered by — and for two years following the termination of — the agreement (see Matter of Rodriguez [Penn Mut. Life Ins. Co.-Commissioner of Labor], 193 AD3d at 1192). After interviewing for the agent position, claimant was subject to a background check (see id.; Matter of Giampa [Quad Capital, LLC-Commissioner of Labor], 181 AD3d at 1129-1130), was required to pass a test demonstrating his knowledge of the insurance products offered by Paul Revere and was paid on a commission basis (see Matter of Paratore [Bankers Life & Cas. Co.-Commissioner of Labor], 199 AD3d at 1198). Although Paul Revere disputes much of claimant's testimony and criticizes the Board's purportedly selective reading thereof, such testimony — if credited — constitutes substantial evidence to support the Board's finding of an employment relationship between Paul Revere and claimant, notwithstanding other evidence that could support a contrary conclusion (see id. at 1199).
As a final matter, although the record does not reflect whether the Board expressly considered the relevant guidelines in ascertaining claimant's employment status as an insurance agent (see New York State Department of Labor, Guidelines for Determining Worker Status: Insurance Sales Industry [Dec. 2020]), "we discern no inconsistency between either the guidelines and the common-law employer-employee test or the guidelines and the Board's decision" (Matter of Rodriguez [Penn Mut. Life Ins. Co.-Commissioner of Labor], 193 AD3d at 1192-1193). To the extent that Paul Revere argues that the Board erred in applying its finding of employment to all others determined to be similarly situated to claimant, we disagree (see e.g. Matter of Gabel [Bankers Life & Cas. Co.-Commissioner of Labor], 199 AD3d at 1204). Paul Revere's remaining arguments have been examined and found to be lacking in merit.
Egan Jr., J.P., Lynch, Aarons and Pritzker, JJ., concur.
ORDERED that the decisions are affirmed, without costs.

Footnotes

Footnote 1: The Board's decision did not expressly address this issue, but it did affirm the ALJ's decision on this point, and Paul Revere contests this issue upon appeal.